## STATE *EX REL.* KIRVEN v. SCARBOROUGH.

1. CONTEMPT—JURISDICTION.—A CIRCUIT JUDGE has no jurisdiction to hear the issues in a proceeding in mandamus in any other county than the one in which the defendant resides, and disobedience of such an order is not contempt, and question of jurisdiction may be raised for first time in this Court.

2. IBID.—IBID.—CHAMBERS.—A CIRCUIT JUDGE has no jurisdiction at chambers to pass judgment in a case of criminal contempt.

Before WATTS, J., Darlington, February, 1904. Reversed.

Proceedings in mandamus on relation of J. K. Kirven against R. J. Scarborough. From Circuit order, respondent, Scarborough, appeals.

*Messrs. Spears & Dennis,* for appellant, cite: *To compel an officer to obey a writ of mandamus, it must be shown that he has the ability to comply, and it is his clear legal duty:* 15 S. C., 322; 7 S. C., 275; 1 S. C., 23; 18 S. C., 250; 33 S. C., 278; 7 Rich., 322; 6 Col., 526; 13 Ency. P. & P., 494. *Issues in mandamus are triable in the county where the defendant resides:* 50 S. C., 562. *Circuit Court cannot enforce process of inferior court:* 2 Rich., 187; 13 Ency. P. & P., 789, 790. *Party acting with no intent to insult the Court or defy its process, or who is unable to comply, is not guilty of contempt:* 7 Ency., 2 ed., 71, 72, 74; 4 Ency. P. & P., 788, 790, 791; 2 Bay. L., 619. *Appeal stays enforcement of penalty of order adjudging contempt:* 49 S. C., 322; 28 Wash., 16. *Circuit Judge cannot punish for criminal contempt at chambers:* 49 S. C., 206.

*Messrs. Coggeshall & Edwards,* contra, cite: *Order turning over property to prosecutor without opportunity to be heard, is illegal:* Cool. Con. Lim., 305. *Contempt is purged only by showing of inability to carry out order without fault of contemnor:* 7 Ency., 2 ed., 75, 72, 73; 1 McM., 322; 2 Strob., 553. *Magistrate constable must obey order of that court:* Crim. Code, 414; 1 McM., 322. *And on refusal, mandamus will issue to compel him:* 34 S. C., 194. *Writs of mandamus may be issued at chambers:* Con. 1895, art. V., sec. 25; Code, 1902, 2736. *And heard in county other than the one in which defendant resides:* Code of 1902, 3000; Code of Proc., 144-6, 452; 28 Ency., 201.

November 30, 1904.    The opinion of the Court was delivered by

MR. JUSTICE JONES.    On December 24, 1903, John Floyd, a magistrate for Darlington County, on the affidavit of T. Z. Odom, issued a warrant against J. K. Kirven for larceny of a mule valued at one hundred and fifty dollars, and at same time issued a search warrant directing R. J. Scarborough, as special constable, to search the premises of J. K. Kirven, take possession of said mule, and keep the same to be disposed of according to law.    The case having been transferred to Magistrate H. E. P. Sanders, he conducted the preliminary examination and found that the prosecutor had utterly failed to produce any proof that the said John K. Kirven was guilty of the charge of larceny, or that the property seized under the said search warrant was stolen property; but, on the contrary, it appeared that the said property had been wrongfully taken from the possession of the said John K. Kirven.    He accordingly dismissed the case and ordered Scarborough to restore the property to the possession of Kirven.    Upon failure or refusal of Scarborough to obey the order of Magistrate Sanders, Judge Watts at chambers issued an alternative writ of mandamus, commanding Scarborough to deliver the mule, as required by the order of Magistrate Sanders, or show cause at Cheraw, S. C., why he did not obey said order.    Scarborough made return, among other matters, claiming that it was a matter of physical impossibility for him to comply with the order of the magistrate or the writ of mandamus, as the property was no longer in his custody or control, but had been turned over to the prosecutor, T. Z. Odom, under the order of the magistrate who issued the papers.    Judge Watts held the return insufficient, and issued a peremptory writ of mandamus, January 18, 1904, commanding Scarborough to forthwith deliver the property to Kirven.    From this order Scarborough gave due notice of appeal, making the point, among others, that Judge Watts had no authority to make

the alternative writ of mandamus returnable at chambers, and to hear and determine the issues therein involved out of the county in which respondent resides.    Scarborough resides in Darlington County, and the issues were heard and determined by Judge Watts at his chambers in Cheraw, S. C., in Chesterfield County.

Scarborough having failed or refused to turn over the mule as directed, Judge Watts, on January 22, 1904, issued an order requiring Scarborough to show cause before him at his chambers in Cheraw, why he should not be adjudged in contempt of Court.    To this Scarborough made return that it was impossible for him to obey the order of the magistrate or the writ of mandamus; that he had turned the mule over to Odom, as ordered by Magistrate Floyd; that Odom had turned it over to W. B. Brunson, the man from whom he had purchased it; that Brunson had turned it over to N. R. Harrell, a partner of John K. Kirven, in the firm of Harrell & Kirven, who claimed to be the owner of the mule; that demand had been made upon Harrell for the mule, and that Harrell had informed him that he had disposed of it; that he, Scarborough, had made diligent inquiry as to the whereabouts of the property without being able to find it; that he intended no disrespect to the orders of the Court, and would willingly comply if possible.    A counter-affidavit by Magistrate Floyd was submitted, to the effect that Scarborough did not apply to him, either before or after the case was heard by Magistrate Sanders, for direction as to what disposition to make of the mule.

On February 2, 1904, Judge Watts, at his chambers, Cheraw, S. C., made an order adjudging Scarborough in contempt, for refusing to obey the peremptory writ requiring him to deliver the mule to Kirven; the order concluding as follows: "It is, therefore, ordered, that the said R. J. Scarborough do within ten days from the date hereof turn over to the said John K. Kirven the said dark brown mule, as required by the order of this court, of date January 18th,

1904; and that in case he fails so to do within the aforesaid period of ten days, he do pay to the clerk of the Court of Darlington County, in the State aforesaid, a fine of $150, to be held by the said clerk of Court subject to the further order of this Court. It is further ordered, that in case the said R. J. Scarborough shall fail to pay the said fine of $150 within the said period of ten days and two days thereafter, to wit: within twelve days from the date hereof, the said R. J. Scarborough be committed to the common jail of Darlington County, in the State aforesaid, and there kept in close confinement without bail for the term of sixty days."

From this order R. J. Scarborough appeals upon the following exceptions:

"I. His Honor should have held that the return of the respondent to the aforesaid rule to show cause why he should not be adjudged in contempt, showed conclusively the actual inability and impossibility for the respondent to perform the conditions of the said order before the issuance of the same or of any proceeding connected therewith, and that the said inability was not caused or brought about by any negligence or default on the part of the respondent, and that he did not wilfully defy the Court or its authority, and had exhausted every means and made every effort to obey the said order, and it was error and abuse of discretion not so to hold.

"II. His Honor should have held that the notice of intention to appeal to the Supreme Court from the peremptory writ having been served and such service made known to the Court, the Court could not proceed to adjudge the respondent in contempt for failure to obey said order pending appeal from the said order, and it was error not so to hold.

"III. His Honor should have granted respondent's motion to quash and dismiss the peremptory writ, upon which the contempt proceedings were based, for irregularities and want of jurisdiction apparent upon the face of the proceedings; in that (a) the Court had no power or authority to make the writ returnable at chambers, and to hear and

determine the issues therein involved outside of the county wherein the respondent resided; (b) inadequacy of legal remedy was not shown, or any facts from which it could be inferred; (c) no special interest in the property was alleged, which gave the relator a legal or equitable right to the writ or to entitle him to the relief sought; (d) no facts alleged from which it can be inferred the respondent had the ability to comply, and it was error not so to hold.

"IV. His Honor should have held that the affidavit upon which the contempt proceedings were based was insufficient; in that (a) it did not allege respondent's ability to comply, nor a wilful disobedience of the order of the Court; (b) a refusal to obey with ability to do so; (c) nor did it allege any wilful negligence or default on the part of the respondent, and it was error and abuse of discretion not so to hold.

"V. His Honor should have held that he had no power or authority to punish for a contempt in the case at his chambers; in that the acts complained of which, in the judgment of the Circuit Judge, constituted a contempt of his court, occurred before the Circuit Judge acquired jurisdiction over respondent or of the subject matter of the proceedings, and arose out of a criminal case; and he erred in not so holding.

"VI. It appearing by respondent's return that there were other parties other than relator and respondent directly interested in the question involved claiming the property which respondent was ordered to turn over to the relator, all parties should have been remitted to an action at law and the proceedings dismissed, and it was error for his Honor, the Circuit Judge, not so to hold."

The disobedience of an order made by a Court or Judge without jurisdiction is not a contempt. *State* v. *Nathans,* 49 S. C., 200, 27 S. E., 52. If, therefore, Judge Watts had no jurisdiction to hear and determine the issues raised by the return of the writ of mandamus, the failure or refusal of Scarborough to obey his order thereon does not constitute a contempt. The writer of this opinion, in

the opinion prepared by him in the case of *LaMotte* v. *Smith*, 50 S. C., 558, 562, 27 S. E., 933, used the following language: "Proceedings in mandamus are triable in the county where the respondent resides. It is true, that sections 145 and 146 of the Code of Procedure, relating to the place of trial of civil actions, do not directly apply to proceedings in mandamus; since section 452 of the Code provides'that 'until the legislature shall otherwise provide, the second part of this Code of Procedure shall not affect proceedings by mandamus or prohibition.' But in sec. 2344, Gen. Stat., 2459 Rev. Stat., it is provided, 'If any issues shall be joined on such proceedings (mandamus), the person or persons suing such writ shall and may try the same in such places as a civil action might or should have been tried,' &c. So that whether we may look to the Code of Procedure to ascertain the meaning of 'a civil action,' or whether it means 'action on the case,' under the practice before the Code, as said in *State* v. *Treasurer,* in 10 S. C., 40, an issue in mandamus proceedings should be tried where the respondent resides."

This we regard a correct statement of the law. It must follow that Judge Watts had no jurisdiction to hear and determine the issues in the mandamus proceedings in a county other than that in which the respondent in such proceedings resided. It does not appear that any objection was made to the jurisdiction of Judge Watts on the hearing of the return to the writ of mandamus; but it has been determined that a question of jurisdiction may be first raised in this Court. *Ware* v. *Henderson,* 25 S. C., 385; *Bell* v. *Fludd,* 28 S. C., 313, 5 S. E., 810.

Furthermore, this was a proceeding in crimnal contempt, and in the case of *State* v. *Nathans, supra,* this Court held that a Judge at chambers has no jurisdiction to pass judgment or sentence for criminal contempt, except such as may be committed in the immediate presence of the Court.

These views necessarily work a reversal of the judgment

appealed from, and it is deemed improper to further consider the exceptions.

The order adjudging appellant in contempt is, therefore, set aside for want of jurisdiction.